**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JDOG FRANCHISES, LLC; and JDOG HOLDINGS, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>SOUTHSIDE VET, LLC; SOUTHSIDE STRONG LLC; ROBERT R. REICHARDT; and STEVEN D. FRASHER,<br><br>Defendants. | Civil Action No.: |

**COMPLAINT FOR PERMANENT INJUNCTIVE RELIEF, DAMAGES, AND JURY DEMAND**

Plaintiffs JDog Franchises, LLC ("JDog") and JDog Holdings, LLC ("JDog Holdings," together with JDog, "Plaintiffs"), by and through their undersigned counsel, submit this Complaint for Permanent Injunctive Relief and Damages against Defendants Southside Vet, LLC ("Southside Vet"), Southside Strong LLC ("Southside Strong"), Robert R. Reichardt ("Reichardt"), and Steven D. Frasher ("Frasher," and collectively with Southside Vet, Southside Strong, and Reichardt, "Defendants"). In support of their Complaint, Plaintiffs allege as follows:

**NATURE OF THE ACTION**

1. This is a civil action for permanent injunctive relief and damages arising from Southside Vet's material breaches of its franchise agreement with JDog; Reichardt's breach of his personal guaranty; and Defendants' coordinated establishment and operation of a competing junk-removal business using the former JDog franchise's operating assets, customer relationships, confidential information, digital accounts, reputation, trademarks, and goodwill.

## THE PARTIES

2. Plaintiff JDog Franchises, LLC is a Delaware limited liability company with its principal place of business in Berwyn, Pennsylvania. JDog is the franchisor of JDog Junk Removal & Hauling businesses throughout the United States.

3. Plaintiff J Dog Holdings, LLC is a Delaware limited liability company with its principal place of business in Berwyn, Pennsylvania. J Dog Holdings owns the trademarks, logos, designs, and related source-identifying materials used in connection with the JDog franchise system, which it licenses to JDog for use in operating and administering JDog Junk Removal & Hauling franchises.

4. Defendant Southside Vet, LLC is an Illinois limited liability company with a principal place of business at 10619 Mayfield Avenue, Chicago Ridge, Illinois 60415.

5. Defendant Robert R. Reichardt is an individual and citizen of Illinois residing at 10619 Mayfield Avenue, Chicago Ridge, Illinois 60415. R. Reichardt is the owner, President, and controlling principal of Southside Vet.

6. Defendant Steven D. Frasher is an individual and, upon information and belief, citizen of Illinois whose residential address is presently unknown to Plaintiffs. Frasher is Reichardt's brother and formerly served as Operations Manager of the JDog Junk Removal & Hauling business operated by Southside Vet.

7. Defendant Southside Strong LLC is an Illinois limited liability company with a principal place of business at 10619 Mayfield Avenue, Chicago Ridge, Illinois 60415 – the same address from which Southside Vet operated the JDog Oak Lawn franchise.

8. Southside Strong was organized as an Illinois limited liability company on June 8, 2026. Frasher is Southside Strong's manager and registered agent.

9. Frasher's registered-agent address for Southside Strong is 10619 Mayfield Avenue, Chicago Ridge, Illinois 60415 – the same address maintained by Southside Strong, Southside Vet, and R. Reichardt.

10. Upon information and belief, Reichardt owns, controls, manages, and/or holds a financial interest in Southside Strong.

11. Upon information and belief, Reichardt and Frasher jointly established and operated Southside Strong while Reichardt and Southside Vet remained bound by the Franchise Agreement.

## JURISDICTION AND VENUE

12. This Court has original subject-matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 because Plaintiffs assert claims arising under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

13. This Court has supplemental jurisdiction over Plaintiffs' related state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiffs' federal claims.

14. This Court also has original subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 because Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

15. Dog and JDog Holdings are each single-member limited liability companies whose sole member is JD Investment Company, LLC, a Delaware limited liability company. No member of JD Investment Company, LLC is a citizen of Illinois. Accordingly, neither Plaintiff is a citizen of Illinois for purposes of diversity jurisdiction.

16. Upon information and belief, each member of Southside Vet and Southside Strong is a citizen of Illinois. Reichardt and Frasher are also citizens of Illinois.

17. The amount in controversy exceeds $75,000 because Plaintiffs seek, among other relief, lost future royalties exceeding $75,000, compensatory damages, Defendants' profits, interest, attorneys' fees, costs, and permanent injunctive relief.

18. This Court has personal jurisdiction over Southside Vet because Southside Vet expressly consented to the exclusive jurisdiction of this Court for proceedings relating to or arising from the Franchise Agreement.

19. Specifically, Section 19.12 of the Franchise Agreement provides that the United States District Court for the Eastern District of Pennsylvania "shall have exclusive jurisdiction to entertain any proceeding relating to or arising out of" the Franchise Agreement and that the parties consent to this Court's jurisdiction in all matters related to the Franchise Agreement.

20. This Court has personal jurisdiction over Reichardt because he executed the Franchise Agreement on Southside Vet's behalf, personally guaranteed Southside Vet's payment and performance of all obligations arising under the Franchise Agreement, and agreed individually to be bound by and perform the obligations imposed upon Southside Vet's principal.

21. This Court has personal jurisdiction over Southside Strong and Frasher because they are closely related to Southside Vet, Reichardt, the Franchise Agreement, and this dispute. Frasher managed the franchised business, traveled with Reichardt to JDog's headquarters in Berwyn, Pennsylvania to receive training concerning the operation of the franchise, and thereafter became manager of Southside Strong, the competing successor entity that received and exploited the former franchise's assets, accounts, customer relationships, reputation, and goodwill.

22. In the alternative, this Court has specific personal jurisdiction over Southside Strong and Frasher because Plaintiffs' claims arise from their knowing acquisition and exploitation of property, contractual rights, intellectual property, and goodwill belonging to or licensed by Plaintiffs, which they knew would cause injury to Plaintiffs in Pennsylvania.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District and because Defendants are bound by the Franchise Agreement's exclusive selection of this District as the forum for disputes relating to or arising from the Franchise Agreement.

## FACTUAL BACKGROUND

### A. JDog's Franchise System

24. JDog Franchises is the franchisor of JDog Junk Removal & Hauling businesses, which provide residential and commercial junk-removal and hauling services throughout the United States.

25. JDog Franchises and JDog Holdings have developed a distinctive franchise system for the establishment and operation of JDog Junk Removal & Hauling businesses (the "JDog System").

26. The distinguishing characteristics of the JDog System include, among other things, distinctive trademarks, logos, designs, branding, slogans, operating methods, business procedures, confidential information, advertising materials, customer-development methods, and standards for the operation of JDog Junk Removal & Hauling businesses.

27. JDog Holdings owns the trademarks, logos, designs, and related source-identifying materials used in connection with the JDog System.

28. Among those trademarks is the federally registered design mark depicted in United States Trademark Registration No. 4,850,337 (the "JDog Mark"). The United States Patent and Trademark Office registered the JDog Mark on November 10, 2015.

29. The JDog Mark's registration is valid, subsisting, in full force and effect, and cover the goods and services identified in the registration certificates. The registrations are incontestable under the Lanham Act, 15 U.S.C. § 1065. The registration remains live and has been renewed. A copy of the certificate of registration for the JDog Mark is attached hereto as Exhibit A.

30. JDog Holdings licenses the JDog Mark and related source-identifying materials to JDog Franchises for use in operating and administering the JDog System.

31. JDog Franchises, in turn, grants approved franchisees a limited right to use the JDog System and JDog Mark solely in connection with the operation of authorized JDog Junk Removal & Hauling businesses and only during the term of their franchise agreements. A JDog franchisee acquires no ownership interest in the JDog Mark, the JDog System, or the goodwill associated with them.

32. The JDog Mark has become a valuable asset of substantial and inestimable worth to JDog. JDog has a vital economic interest in protecting its name and the JDog Mark. The goodwill generated through a franchisee's authorized use of the JDog Mark accrues to the benefit of Plaintiffs and the JDog System.

**B. Southside Vet Enters into the Franchise Agreement**

33. On September 9, 2022, JDog Franchises and Southside Vet entered into a written Franchise Agreement for the operation of a JDog Junk Removal & Hauling business in Oak Lawn, Illinois (the "Franchise Agreement"). A copy of the Franchise Agreement is attached hereto as Exhibit B.

34. The Franchise Agreement granted Southside Vet a limited right to operate a JDog Junk Removal & Hauling business within the designated Oak Lawn territory and to use the JDog System and JDog Mark in connection with that authorized business.

35. The Franchise Agreement established a fifteen-year term commencing February 1, 2023. Absent earlier termination, the term would have continued through January 31, 2038.

36. Reichardt executed the Franchise Agreement as President of Southside Vet and was designated as the franchised business's initial Management Personnel.

37. In conjunction with the Franchise Agreement, Reichardt also executed the Franchisee's Principal Guaranty and Covenant therewith (the "Guaranty").

38. Under the Guaranty, Reichardt individually and unconditionally guaranteed Southside Vet's payment and performance of all obligations arising under the Franchise Agreement. The Guaranty is irrevocable, unlimited, and continuing, and authorizes JDog Franchises to proceed against Reichardt without first exhausting its remedies against Southside Vet.

39. Frasher subsequently served as Operations Manager of the JDog Oak Lawn franchise and participated directly in the operation of the franchised business.

40. In connection with that role, Frasher traveled with Reichardt to JDog's headquarters in Berwyn, Pennsylvania, where Plaintiffs trained him concerning the operation of the JDog Oak Lawn franchise and the JDog System.

**C. <u>Defendants Establish a Competing Business During the Franchise Term</u>**

41. By no later than March 2026, while the Franchise Agreement remained in effect, Reichardt and Frasher had established and begun operating a competing junk-removal business under the name Southside Strong Junk Removal.

42. Southside Strong operated from the same address as the JDog Oak Lawn franchise and used the franchise's telephone number, (708) 940-0615.

43. On March 24, 2026, Southside Strong publicly announced its competing business with the statement "New Name. Same 5-Star Reputation!" Southside Strong further claimed that it possessed "340 five-star reviews" and had served more than 3,500 customers throughout Chicagoland and the surrounding suburbs:




44. Defendants' operation of Southside Strong violated Article 18 of the Franchise Agreement, which prohibited Southside Vet from directly or indirectly engaging in, assisting, managing, financing, or holding an interest in a business competitive with the JDog System during the franchise term.

45. Defendants' appropriation of the JDog Oak Lawn franchise's telephone number, reviews, customer relationships, reputation, and goodwill also violated the Franchise Agreement's

express recognition that Southside Vet acquired no ownership interest in the JDog Mark, the JDog System, or the goodwill generated through the franchise.

46. The Franchise Agreement further prohibited Southside Vet from using – or permitting its officers, employees, agents, or representatives to use – JDog Franchises' proprietary Know-How and Confidential Information for any purpose inconsistent with the operation of the authorized franchise. See Franchise Agreement § 18.

**D. JDog Discovers the Competing Operation and Demands Compliance**

47. JDog Franchises discovered that Reichardt and Frasher were operating or assisting Southside Strong while the Franchise Agreement remained in effect.

48. On April 7, 2026, JDog Franchises, through counsel, sent Southside Vet and Reichardt a written cease-and-desist demand concerning the competing operation (the "Cease-and-Desist Letter"). A copy of the Cease-and-Desist Letter is attached hereto as Exhibit C.

49. The Cease-and-Desist Letter specifically identified Southside Strong's use of the JDog Oak Lawn telephone number and its representation that it was the "new name" associated with the same five-star reputation.

50. JDog Franchises demanded that Southside Vet and Reichardt cease their direct or indirect participation in the competing business, discontinue any use of the JDog Mark or messaging implying continuity with JDog, and cease using the JDog Oak Lawn telephone number and goodwill.

51. The Cease-and-Desist Letter placed Southside Vet and Reichardt on actual notice that their participation in Southside Strong violated the Franchise Agreement and infringed Plaintiffs' contractual and proprietary rights.

52. Although Defendants thereafter removed certain express references to JDog from Southside Strong's public-facing platforms, they did not abandon the competing business or discontinue their use of the franchise's customer-facing assets and goodwill.

**E. Defendants Formalize Southside Strong and Conceal Their Plans from JDog**

53. On June 8, 2026 – while the Franchise Agreement remained in effect – Defendants organized Southside Strong as an Illinois limited liability company. A copy of Southside Strong's articles of organization is attached hereto as Exhibit D.

54. Southside Strong's principal place of business was identified as 10619 Mayfield Avenue, Chicago Ridge, Illinois – the same address maintained by Southside Vet, Reichardt, and the JDog Oak Lawn franchise.

55. Frasher, who had served as Operations Manager of the JDog Oak Lawn franchise, became Southside Strong's manager and registered agent.

56. Frasher's transition from managing the JDog franchise to managing its competing successor demonstrates that Southside Strong was not an unrelated purchaser. It was the entity through which Reichardt and Frasher intended to continue the same junk-removal operation outside the JDog System.

57. Neither Southside Vet nor Reichardt disclosed the formation of Southside Strong to JDog Franchises or requested approval to transfer the franchise or any of its assets to Southside Strong.

58. Instead, on June 15, 2026 – one week after Southside Strong was formally organized – Reichardt contacted JDog Franchises regarding the "possibility" of closing JDog Oak Lawn and requested a discussion concerning his future as a JDog franchise owner. A copy of the email chain containing these communications is attached hereto as Exhibit E.

59. On June 18, 2026, Reichardt informed JDog Franchises that he intended to pursue termination of the franchise relationship and requested the documents, requirements, timelines, financial obligations, and procedures necessary to close the JDog Oak Lawn franchise. See Exhibit E.

60. JDog Franchises responded by providing Reichardt with the Franchise Agreement and directing him to the provisions governing termination and Southside Vet's post-termination obligations.

61. Reichardt thereafter announced that Southside Vet would cease operating the JDog Oak Lawn franchise at the end of June, that June would be the final month in which Southside Vet paid franchise fees, and that the account used to pay those fees would be closed.

62. Reichardt did not disclose that he and Frasher had already launched the competing operation, received the Cease-and-Desist Letter concerning that operation, and formally organized Southside Strong.

**F. Defendants Transfer the Franchised Business and Its Assets Without JDog's Consent**

63. On July 1, 2026, Reichardt informed JDog Franchises that JDog Oak Lawn had ceased operating. See Exhibit E.

64. Reichardt further admitted that he had "completed the sale of all business assets to another local junk removal company."

65. Reichardt identified the transferred assets as including the franchise's trucks, customer relationship management system and data, Google Business Profile, and business telephone number.

66. The purported purchaser was Southside Strong – the competing business Reichardt and Frasher had established and begun operating while the Franchise Agreement remained effective.

67. Section 17.1 of the Franchise Agreement expressly prohibited Southside Vet from directly or indirectly selling, assigning, transferring, sublicensing, or otherwise conveying the Franchise Agreement, the franchised business, any part of the franchised business, or any of Southside Vet's franchise rights without JDog Franchises' prior written consent.

68. Any proposed transfer required, among other things, disclosure to and approval by JDog Franchises, execution of JDog Franchises' required transfer documents, training and approval of the transferee's management personnel, satisfaction of Southside Vet's outstanding obligations, and payment of the required transfer fee.

69. Southside Vet and Reichardt did not disclose the proposed transfer, identify Southside Strong as the proposed transferee, request JDog Franchises' approval, or satisfy any of the Franchise Agreement's transfer conditions.

70. JDog Franchises did not approve the transfer of the franchised business or any franchise rights or assets to Southside Strong, Reichardt, or Frasher.

71. The purported transfer therefore constituted an unauthorized transfer and Material Default under the Franchise Agreement.

72. The transfer of the franchise's CRM information and other operating information to Southside Strong also violated Southside Vet's obligations not to disclose or use JDog Franchises' Know-How and Confidential Information for any purpose inconsistent with the Franchise Agreement.

73. The Franchise Agreement further provides that the telephone numbers, URLs, and social-media accounts used in connection with the franchised business are the property of JDog Franchises or are held by Southside Vet in trust for JDog Franchises.

74. Southside Vet therefore had no authority to sell or transfer the JDog Oak Lawn telephone number or related customer-facing accounts to Southside Strong.

**G. Defendants Redirect JDog Customers to Southside Strong**

75. On July 1, 2026, Reichardt configured or permitted his JDog email account to automatically inform customers that JDog Oak Lawn had "permanently closed following the sale of the business." A copy of email communications reflecting this automatic message is attached hereto as Exhibit F.

76. The automatic response directed all future junk-removal and hauling customers to Southside Strong and provided Southside Strong's email address.

77. Defendants thereby used a JDog email account and JDog's existing customer relationships to redirect business from the JDog System to Southside Strong.

78. Defendants' communications presented Southside Strong to customers as the successor to JDog Oak Lawn and used Plaintiffs' established commercial reputation to generate business for their competing enterprise.

**H. JDog Terminates the Franchise Agreement and Elects Its Remedies**

79. The Franchise Agreement defines an unauthorized assignment or transfer of the franchised business, franchise rights, JDog Mark, Know-How, Confidential Information, operating methods, or business format as a Material Default permitting immediate termination. See Franchise Agreement §§ 14(d), 17.1.

80. Accordingly, on July 1, 2026, JDog Franchises terminated the Franchise Agreement based upon Southside Vet's Material Defaults by way of a formal Notice of Termination (the "Termination Notice"). A copy of the Notice of Termination is attached hereto as Exhibit G.

81. The Termination Notice advised Southside Vet and Reichardt that JDog Franchises intended to enforce Southside Vet's post-termination obligations and demanded preservation of all evidence relating to the dispute and Defendants' conduct.

82. Upon termination, Southside Vet was required to immediately discontinue using the JDog Mark, JDog System, Confidential Information, operating methods, business format, and goodwill.

83. Southside Vet was also prohibited from operating in any manner likely to cause the public to believe that it remained associated or affiliated with Plaintiffs or the JDog System.

84. On July 6, 2026, JDog Franchises notified Southside Vet and Reichardt that it had elected to enforce its contractual rights arising from the termination (the "Election of Remedies"). A copy of the Election of Remedies is attached hereto as Exhibit H.

85. In the Election of Remedies, JDog Franchises demanded payment of all outstanding amounts, compliance with Southside Vet's post-termination obligations, and transfer of the telephone numbers, URLs, social-media accounts, and other assets subject to JDog Franchises' contractual rights.

86. JDog Franchises also elected to recover the benefit of its contractual bargain, including the royalties it would have received during the unexpired balance of the fifteen-year franchise term.

87. Southside Vet and Reichardt have failed and refused to pay the amounts due under the Franchise Agreement or comply with their post-termination obligations.

## I. Defendants Continue to Exploit Plaintiffs' Marks, Reputation, and Goodwill

88. Defendants have not transferred the JDog Oak Lawn telephone number, Google Business Profile, customer reviews, or related customer-facing assets to JDog Franchises.

89. Instead, Southside Strong continues to use the former JDog Oak Lawn telephone number, (708) 940-0615, in connection with its competing junk-removal business.

90. Moreover, a Google search for JDog Oak Lawn directs consumers to Southside Strong's business listing:




91. Southside Strong's Google Business Profile contains hundreds of reviews generated through the operation of the JDog Oak Lawn franchise, including reviews that expressly identify the service provider as "JDog," "JDog Junk Removal & Hauling Oak Lawn," or "J Dog Oak Lawn."

92. The profile also continues to display, among other things, photographs of JDog-branded vehicles and operations bearing the JDog Mark:




93. Thus, consumers searching specifically for the former JDog Oak Lawn franchise are directed to Southside Strong and shown JDog-branded content within Southside Strong's business profile, creating the false impression that Southside Strong is affiliated with, authorized by, or an approved successor to Plaintiffs and the JDog System.

94. Defendants' continued use of these materials causes consumers to believe that Southside Strong is an authorized continuation, successor, affiliate, or rebranding of JDog Oak Lawn.

95. Defendants' conduct has diverted and continues to divert customers, revenue, and goodwill from Plaintiffs and the JDog System to Southside Strong.

96. Unless enjoined, Defendants will continue exploiting Plaintiffs' marks, customer-facing assets, reputation, and goodwill and will continue causing consumer confusion and irreparable injury to Plaintiffs and the JDog System.

**<u>COUNT I</u>**
**BREACH OF THE FRANCHISE AGREEMENT**
**(Against Southside Vet)**

97. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

98. The Franchise Agreement is a valid and enforceable contract between JDog Franchises and Southside Vet.

99. JDog Franchises performed its obligations under the Franchise Agreement or was excused from further performance by Southside Vet's material breaches.

100. Southside Vet materially breached the Franchise Agreement by, among other things:

a. directly and indirectly establishing, assisting, and operating Southside Strong as a competing junk-removal business during the franchise term;

b. using and permitting others to use the JDog System, Know-How, Confidential Information, customer relationships, and goodwill for purposes inconsistent with the Franchise Agreement;

c. selling and transferring the franchised business and its assets without JDog Franchises' knowledge or prior written consent;

d. transferring the franchise's CRM information, Google Business Profile, telephone number, customer-facing accounts, and other assets to Southside Strong;

e. ceasing operation of the authorized franchised business before expiration of the franchise term;

f. failing to discontinue the use of the JDog Mark, JDog System, customer-facing assets, reputation, and goodwill following termination;

g. failing to transfer the franchise telephone number and related digital accounts to JDog Franchises;

h. operating and assisting a competing business after termination;

i. failing to pay all amounts due under the Franchise Agreement; and

j. failing to comply with JDog Franchises' post-termination demands.

101. Southside Vet's breaches constituted Material Defaults and caused JDog Franchises to terminate the Franchise Agreement.

102. Under Section 14.5 of the Franchise Agreement, JDog Franchises is entitled to recover the benefit of its bargain, including the royalties it would have received during the unexpired balance of the fifteen-year franchise term.

103. JDog Franchises is also entitled to recover all other damages, interest, attorneys' fees, costs, and equitable relief available under the Franchise Agreement and applicable law.

104. As a direct and proximate result of Southside Vet's breaches, JDog Franchises has suffered and continues to suffer substantial monetary and irreparable harm.

**COUNT II**
**BREACH OF GUARANTY**
**(Against Reichardt)**

105. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

106. Reichardt executed the Guaranty to induce JDog Franchises to enter into the Franchise Agreement with Southside Vet.

107. Under the Guaranty, Reichardt individually and unconditionally guaranteed the prompt payment and performance of all obligations arising under or evidenced by the Franchise Agreement.

108. The Guaranty is irrevocable, unlimited, and continuing, and authorizes JDog Franchises to proceed against Reichardt without first exhausting its remedies against Southside Vet.

109. Southside Vet failed to pay and perform its obligations under the Franchise Agreement.

110. JDog Franchises demanded that Reichardt satisfy the obligations guaranteed under the Guaranty.

111. Reichardt has failed and refused to satisfy those obligations.

112. Reichardt is therefore liable for all amounts and obligations due from Southside Vet, including lost future royalties, other contractual damages, interest, attorneys' fees, costs, and required post-termination performance.

**COUNT III**
**FEDERAL TRADEMARK INFRINGEMENT**
**(15 U.S.C. § 1114)**
**(Against All Defendants)**

113. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

114. JDog Holdings owns the federally registered JDog Mark identified in United States Trademark Registration No. 4,850,337.

115. The registration is valid, subsisting, and incontestable, and constitutes conclusive evidence of JDog Holdings' ownership of and exclusive right to use the JDog Mark in connection with the registered services.

116. Any authority Defendants possessed to use the JDog Mark arose solely from the Franchise Agreement and ended no later than the Franchise Agreement's termination on July 1, 2026.

117. Without JDog Holdings' consent, Defendants have continued using the JDog Mark in commerce in connection with Southside Strong's competing junk-removal services.

118. Among other things, Defendants have maintained and exploited a Google Business Profile for Southside Strong that displays photographs of JDog-branded vehicles and operations prominently bearing the JDog Mark.

119. Defendants' use of the JDog Mark is likely to cause consumers to believe that Southside Strong is authorized by, affiliated with, sponsored by, or an approved successor to JDog Holdings and the JDog System.

120. Defendants' unauthorized use of the JDog Mark constitutes trademark infringement under 15 U.S.C. § 1114.

121. Defendants' infringement is knowing, intentional, and willful because Defendants knew of JDog Holdings' rights, operated the authorized JDog franchise, received the Cease-and-Desist Letter, and continued their unauthorized conduct after termination.

122. Defendants' conduct has caused and will continue to cause JDog Holdings irreparable injury for which there is no adequate remedy at law.

123. JDog Holdings is entitled to injunctive relief under 15 U.S.C. § 1116 and to recover Defendants' profits, its damages, costs, and other relief under 15 U.S.C. § 1117.

## COUNT IV
## FALSE DESIGNATION OF ORIGIN AND FALSE ASSOCIATION
## (15 U.S.C. § 1125(a))
## (Against All Defendants)

124. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

125. Defendants have used in commerce words, names, symbols, images, digital accounts, telephone numbers, reviews, and other designations that falsely associate Southside Strong with Plaintiffs and the JDog System.

126. Defendants represented Southside Strong as the "New Name" associated with the "Same 5-Star Reputation" developed through the JDog Oak Lawn franchise.

127. Defendants also used the former franchise telephone number, Google Business Profile, customer reviews, JDog-branded photographs, and JDog email account to present Southside Strong as the continuation or rebranding of JDog Oak Lawn.

128. Defendants' conduct is likely to cause confusion and mistake and to deceive consumers concerning Southside Strong's affiliation, connection, association, sponsorship, or approval by Plaintiffs.

129. Defendants' conduct constitutes false designation of origin and false association under 15 U.S.C. § 1125(a).

130. Defendants acted knowingly and willfully, with the intent to trade upon Plaintiffs' reputation and divert the goodwill and customers developed through the JDog System.

131. As a direct and proximate result, Plaintiffs have suffered and continue to suffer lost customers, diverted revenue, damage to their reputation and goodwill, and irreparable harm.

132. Plaintiffs are entitled to injunctive relief, Defendants' profits, compensatory damages, costs, and all other relief available under 15 U.S.C. §§ 1116 and 1117.

## COUNT V
## DECLARATORY JUDGMENT
## (28 U.S.C. §§ 2201 and 2202)
## (Against All Defendants)

133. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

134. An actual and substantial controversy exists concerning Defendants' claimed right to possess, control, and use the former franchise's telephone number, Google Business Profile, customer reviews, digital accounts, Confidential Information, goodwill, and JDog-branded content.

135. Under the Franchise Agreement, Southside Vet possessed no ownership interest in the JDog Mark, JDog System, or associated goodwill.

136. The Franchise Agreement further provides that the telephone numbers, URLs, and social-media accounts used in connection with the franchised business are owned by or held in trust for JDog Franchises and must be transferred upon termination.

137. Southside Vet's purported transfer of those assets to Southside Strong was unauthorized, breached the Franchise Agreement, and did not convey any right to use Plaintiffs' intellectual property, Confidential Information, or goodwill.

138. Defendants nevertheless continue to possess, control, and exploit those assets for Southside Strong's benefit.

139. Accordingly, Plaintiffs are entitled to a declaration that:

a. Defendants possess no right to use the JDog Mark or hold Southside Strong out as affiliated with Plaintiffs or the JDog System;

b. the purported transfer did not convey any right to use the JDog Mark, JDog System, Confidential Information, telephone number, customer-facing accounts, or associated goodwill;

c. JDog Franchises is entitled to possession and control of the former franchise telephone number and related customer-facing accounts; and

d. Defendants must cease their unauthorized use and transfer the subject assets to JDog Franchises.

140. Plaintiffs are entitled to such further coercive and equitable relief as may be necessary to enforce the Court's declaration.

## COUNT VI
## TORTIOUS INTERFERENCE WITH THE FRANCHISE AGREEMENT
## (Against Southside Strong and Frasher)

141. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

142. JDog Franchises and Southside Vet were parties to a valid and enforceable Franchise Agreement.

143. Southside Strong and Frasher knew of the Franchise Agreement and Southside Vet's obligations thereunder.

144. Frasher's knowledge arose, among other things, from his service as Operations Manager of the JDog Oak Lawn franchise and his access to and participation in the franchise relationship.

145. Southside Strong is charged with Frasher's knowledge because Frasher is its manager and acted on its behalf in establishing and operating the competing business.

146. Southside Strong and Frasher intentionally and unjustifiably interfered with the Franchise Agreement by, among other things:

a. establishing and operating Southside Strong as a competing business during the franchise term;

b. inducing, assisting, and participating in Southside Vet's transfer of the franchised business and its assets without JDog Franchises' consent;

c. receiving and exploiting the franchise's CRM information, Google Business Profile, telephone number, customer relationships, reviews, and goodwill;

d. assisting Southside Vet's prohibited competition during and after the franchise term; and

e. using the transferred assets to divert customers and business from the JDog System.

147. Frasher undertook this conduct outside the legitimate scope of his work for Southside Vet and for his own personal benefit and the benefit of Southside Strong.

148. Southside Strong and Frasher's interference caused Southside Vet to breach the Franchise Agreement and caused JDog Franchises substantial monetary and irreparable harm.

149. JDog Franchises is entitled to compensatory damages, punitive damages, injunctive relief, and all other available relief.

**COUNT VII**
**CIVIL CONSPIRACY**
**(Against All Defendants)**

150. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

151. Defendants agreed and acted in concert to convert the JDog Oak Lawn franchise into Southside Strong while retaining and exploiting the former franchise's assets, customers, digital presence, reputation, and goodwill.

152. The object of Defendants' agreement was to continue operating the same junk-removal business outside the JDog System while avoiding Southside Vet's contractual obligations and appropriating Plaintiffs' intellectual property and commercial goodwill.

153. Defendants committed numerous overt acts in furtherance of their agreement, including:

a. launching Southside Strong while the Franchise Agreement remained in effect;

b. using the JDog Oak Lawn telephone number, customer reviews, and reputation to promote Southside Strong;

c. concealing Southside Strong's formation and the intended transfer from JDog Franchises;

d. transferring the franchised business and substantially all of its assets to Southside Strong without JDog Franchises' consent;

e. redirecting JDog customers to Southside Strong;

f. maintaining the former franchise's Google Business Profile, reviews, and JDog-branded photographs for Southside Strong's benefit; and

g. continuing to present Southside Strong as affiliated with or the successor to JDog Oak Lawn.

154. Defendants' concerted conduct furthered independently actionable torts, including trademark infringement, false association, and tortious interference with the Franchise Agreement.

155. Reichardt and Frasher acted for their personal benefit and for the benefit of Southside Strong, a separate competing entity, rather than within the legitimate scope of any agency relationship with Southside Vet.

156. Defendants acted intentionally, without legal justification, and with the purpose of harming Plaintiffs' contractual and proprietary interests and benefiting Southside Strong.

157. As a direct and proximate result of Defendants' conspiracy, Plaintiffs have suffered monetary damages and continuing irreparable injury.

158. Plaintiffs are entitled to compensatory damages, punitive damages, injunctive relief, and all other available relief.

**COUNT VIII**
**UNJUST ENRICHMENT (in the Alternative)**
**(Against Southside Strong and Frasher)**

159. Plaintiffs incorporate the above paragraphs as if fully stated in this paragraph.

160. Through the JDog franchise relationship, Plaintiffs developed and conferred valuable benefits associated with the JDog Oak Lawn franchise, including customer relationships, operating information, digital accounts, telephone numbers, customer reviews, reputation, and goodwill.

161. Southside Strong and Frasher knowingly received and appreciated those benefits.

162. Southside Strong and Frasher have used and continue to use those benefits to operate and promote Southside Strong without Plaintiffs' authorization and without providing compensation to Plaintiffs.

163. Southside Strong and Frasher's retention and exploitation of those benefits under these circumstances is unjust and inequitable.

164. Plaintiffs are entitled to restitution, disgorgement of the revenues and profits derived from the wrongfully obtained benefits, the imposition of a constructive trust, an accounting, and all other appropriate equitable relief.

**COUNT IX**
**PERMANENT INJUNCTION**
**(Against All Defendants)**

165. Plaintiffs incorporate the above paragraphs as if fully stated herein.

166. Defendants have violated Plaintiffs' contractual, statutory, and proprietary rights by operating a competing business; using and retaining Plaintiffs' marks, confidential information, customer-facing assets, digital accounts, reputation, and goodwill; and falsely representing Southside Strong as affiliated with or the successor to the JDog Oak Lawn franchise.

167. Defendants' conduct has caused and continues to cause consumer confusion, diversion of customers and goodwill, loss of control over Plaintiffs' marks and reputation, and other irreparable harm that cannot be fully remedied through an award of monetary damages.

168. Plaintiffs have no adequate remedy at law because Defendants continue to possess and exploit the former franchise's telephone number, digital accounts, customer information, JDog-branded materials, and goodwill and, unless enjoined, may continue doing so.

169. The balance of hardships favors Plaintiffs because an injunction would merely require Defendants to cease their unlawful conduct and comply with their contractual and legal

obligations, whereas continued violations would inflict ongoing harm upon Plaintiffs and the JDog System.

170. The public interest favors an injunction preventing consumer confusion, protecting federally registered trademarks, and enforcing valid contractual obligations.

171. Plaintiffs are therefore entitled to a permanent injunction requiring Defendants to cease their unauthorized use of the JDog Mark, the JDog System, Plaintiffs' confidential information and customer-facing assets, and to transfer or return the property belonging to or held for Plaintiffs, together with such other equitable relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs JDog Franchises, LLC and JDog Holdings, LLC respectfully request that the Court enter judgment in their favor and against Defendants and award the following relief:

A. Enter judgment against Defendants on all applicable Counts;

B. Award Plaintiffs all compensatory and contractual damages, including lost future royalties, together with pre- and post-judgment interest;

C. Permanently enjoin Defendants from:

a. using the JDog Mark or otherwise representing any affiliation with Plaintiffs or the JDog System;

b. operating a competing business in violation of the Franchise Agreement;

c. using or retaining Plaintiffs' confidential information, customer information, telephone number, digital accounts, or other property; and

d. interfering with Plaintiffs' contractual and business relationships;

D. Order Defendants to transfer to Plaintiffs the former franchise's telephone number, digital accounts, and other property required to be transferred under the Franchise Agreement, and to return or destroy all confidential information and JDog-branded materials;

E. Award Plaintiffs Defendants' profits, actual damages, enhanced damages, attorneys' fees, and costs to the extent authorized by the Lanham Act, the Franchise Agreement, and applicable law;

F. Award punitive damages, restitution, disgorgement, and any other relief available on Plaintiffs' tort and equitable claims; and

G. Grant such other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand a jury trial on all issues triable by jury.

Dated: July 27, 2026

**THE FRANCHISE FIRM LLP**

*/s/ Evan M. Goldman*
Evan M. Goldman, Esquire
225 Wilmington West Chester Pike
Suite 200
Chadds Ford, Pennsylvania 19317
Tel: 215-965-1553
*Attorneys for Plaintiffs*